# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **CRIMINAL COMPLAINT** |
| v. | : | Mag. No. 14-2520 (DEA) |
| SHAWN BROWN | : | **TO BE FILED UNDER SEAL** |

I, Gady Bishop, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

### SEE ATTACHMENT A

I further state that I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations, and that this complaint is based on the following facts:

### SEE ATTACHMENT B

continued on the attached page and made a part hereof.

_____
Gady Bishop, Special Agent
Department of Homeland Security,
Homeland Security Investigations

Sworn to before me and subscribed in my presence,

____August 6, 2014____ at ____Trenton, New Jersey____

Honorable Douglas E. Arpert
United States Magistrate Judge
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

## ATTACHMENT A

On or about October 4, 2013, in Mercer County, in the District of New Jersey, and elsewhere, defendant SHAWN BROWN

did knowingly and wilfully possess material that contained at least three images of child pornography, as defined in 18 U.S.C. § 2256(8), which images had been shipped and transported using any means and facility of interstate and foreign commerce, had been shipped and transported in and affecting interstate and foreign commerce, and were produced using materials that had been mailed, shipped and transported in and affecting interstate and foreign commerce, including by computer,

in violation of Title 18, United States Code, Section 2252A(a)(5)(B).

## ATTACHMENT B

I, Gady Bishop, Special Agent with Homeland Security Investigations ("HSI") within the United States Department of Homeland Security ("DHS"), have personally participated in this investigation and am aware of the facts contained herein based upon my own investigation, as well as upon information provided to me by other law enforcement officers. Since this Affidavit is submitted for the sole purpose of establishing probable cause to support the issuance of a Criminal Complaint, I have not necessarily included each and every fact known to the Government concerning this investigation.

1. On or about June 15 and June 18, 2013 and again on July 20, 2013, HSI agents from HSI's Cherry Hill, New Jersey office conducted three undercover peer-to-peer ("P2P") sessions utilizing an enhanced version of ARES, a publicly-available P2P software program. The enhanced version is specifically set for single-source downloads and has an embedded mechanism that allows agents to determine the Internet Protocol ("IP") address through which target computers access the Internet.

2. During the June 15, 2013 session, HSI agents discovered a computer sharing files of child pornography on the ARES network. A direct connection to this computer revealed that several of the files being shared had a hash value identified to contain visual depictions of prepubescent children engaged in sexual acts with adults. Agents downloaded one video containing child pornography. The IP address assigned to the computer sharing these files was 68.37.7.73, utilizing the nickname dldlhere@ARES.

3. During the June 18, 2013 session, HSI agents discovered a computer sharing files of child pornography on the same ARES network. The same IP address and nickname were listed

1

for the computer sharing these files as in the preceding paragraph. Agents again downloaded one video containing child pornography.

4. In the July 20, 2013 session, HSI agents downloaded one video containing child pornography during their direct connection with the same computer from the June 15th and June 18th downloads.

5. Subpoena information obtained from Comcast identified 365 Concord Avenue, Ewing, New Jersey 08618 as the location of the computer sharing the child pornography files described in the preceding paragraphs (the "Concord Avenue residence"). The subscriber for this location was listed as an individual later determined through investigation to be a school bus driver ("Individual-1").

6. In July 2013, HSI agents conducted surveillance at the Concord Avenue residence and discovered a black Mercury Cougar bearing Pennsylvania registration HGN5553, with an address of 30 Locust Street, Bressler, Pennsylvania 17113, parked at the Concord Avenue residence. This vehicle was registered to SHAWN BROWN.

7. In August 2013, HSI agents discovered that SHAWN BROWN had two Facebook accounts. One of the Facebook accounts confirmed that BROWN was friends with Individual-1. In addition, the account revealed that Individual-1 had responded to a post by BROWN on Facebook in which BROWN was asking to be a roommate.

8. On or about August 16, 2013, a Facebook subpoena response confirmed that SHAWN BROWN's Facebook account was accessed from IP 68.37.7.73 (the IP address associated with the Concord Avenue residence) from May 26, 2013 through August 3, 2013. In addition, the account data revealed that BROWN accessed his Facebook account from IP 50.149.53.7 prior to May 2013. This is relevant because HSI agents had received information

2

from the Pennsylvania State Police regarding downloads the Pennsylvania State Police had conducted from a peer-to-peer network on this IP (50.149.53.7), which uncovered child pornography. The Pennsylvania State Police confirmed that they had downloaded four videos of child pornography from IP 50.149.53.7, which investigation determined was associated with 30 Locust Street, Steelton, Pennsylvania. Investigation determined that Steelton, Pennsylvania borders on Bressler, Pennsylvania but does not show up on a map.

9. A criminal history check of SHAWN BROWN revealed that a protection order was obtained against him by his ex-wife in 2012. The order was entered with respect to her and their two minor children. With the assistance of the West Shore, Pennsylvania Police Department, HSI agents verified that the order was still active and was in place owing to allegations that BROWN had sexually abused his two children and a minor neighbor. BROWN's daughter (age 5 at time of the alleged abuse) disclosed during a forensic interview that BROWN had put his penis in her mouth and anus and ejaculated. In a separate allegation, the minor neighbor alleged that BROWN had showed her pornography on his computer when she came over to his house to have him fix her iPod. On that occasion, the minor neighbor alleged that BROWN also exposed his penis to her.

10. Based on the aforementioned facts, HSI agents applied for a federal search warrant in the District of New Jersey for the Concord Avenue residence, which was authorized by the Honorable Douglas E. Arpert on October 4, 2013 and executed the same day. An on-site preview of a Sony laptop seized from the Concord Avenue residence revealed evidence of child pornography. Agents seized other electronic media and storage devices from the Concord Avenue residence in addition to the laptop.

11. On October 4, 2013, Your Affiant interviewed SHAWN BROWN, who was present at the Concord Avenue residence during the execution of the search warrant. BROWN admitted to possessing child pornography, which he had obtained from a peer-to-peer network, namely ARES. BROWN stated that he had resided at 30 Locust Street, Bressler, Pennsylvania prior to moving in with Individual-1.

12. Forensic analysis of the items seized from the Concord Avenue residence revealed that SHAWN BROWN's Sony Vaio laptop contained at least 25 images and 70 videos, some of which included sadomasochistic depictions of children. In addition, the evidence revealed that BROWN utilized the pseudonym "Mike Simone" to lure and entice young girls, between the ages of eleven and sixteen years old, to communicate with him via Skype or email. BROWN utilized Skype to engage in communications using a live webcam chat with at least seventeen females who claimed to be under the age of eighteen. Some appear to have exposed their breasts or other body parts while on camera with BROWN. At least three of these girls were identified and interviewed. All were minors and confirmed the user names they used on Skype to communicate with BROWN.

13. An analysis of the Skype chats recovered from SHAWN BROWN's Sony Vaio laptop also revealed that BROWN had distributed child pornography images and videos to at least five contacts utilizing the user name "Mike Simone." The following is a sampling of those videos found on Skype, which in my training and experience are sexually explicit images as defined by Title 18, United States Code, Section 2256(8):

a) **(pthc-jho-lolifuck) 10 yo katrina – pussy cumshot (sound).wmv**: A nude prepubescent female filmed in the video from her neck down to her legs is laying on a bed next to a nude adult male. The child is masturbating the adult's erect penis while

4

the adult is rubbing the child's vagina with his hands. The video ends with the adult ejaculating on the child's stomach.

b) **1(Niece.wmv**: A young prepubescent female is filmed performing oral sex on an adult male while lying on the bed between his legs. At one point the child stops and lays beside the adult while the adult continues masturbating himself until he ejaculates. The child is then seen licking the semen off of the adult's penis.

c) **me n bbgirl.avi**: A toddler-aged female is filmed laying on a bed exposing her vagina. The child uses her own hands to massage her vagina and later a male hand is seen touching the child's vagina and inserting his index finger into her vagina. The video proceeds with the male inserting his penis into the child's vagina. The child then performs oral sex on the male until the male ejaculates on her face. The video is three minutes and 33 seconds long.

d) **(pthc-jho-lolifuck) 6 yo girl gets cum in mouth in laundyroom(.wmv**: A young girl wearing a pink long sleeve shirt and jeans and a pink head band is filmed standing in front of an adult male whose penis is exposed. The adult instructs the child to put his penis in her mouth and move up and down. The child follows the instruction but stops shortly thereafter. The male persists with the child continuing to perform on him, but the child says she cannot. The background reveals a laundry basket with clothes in it and clothes on the floor.

14. Investigation further determined that photographs associated with SHAWN BROWN's Facebook account and "Mike Simone's" Skype account depict the same person who is also depicted in BROWN's driver's license, and who I identified as BROWN when I interviewed him on October 4, 2013.

5

15. On or about October 9, 2013, SHAWN BROWN was administered a polygraph examination. During the process, BROWN admitted viewing child pornography since the age of seventeen. BROWN stated that he utilized the ARES peer-to-peer program to download all types of pornography, which included children. All of the files he collected were in his shared folder on his laptop (the same laptop seized by agents). BROWN had computers and viewed child pornography when he lived with his ex-wife and children in West Shore, Pennsylvania. He left those computers at the house when he moved out following the entering of the protection order. The polygraph exam further revealed that BROWN was being deceptive when asked the relevant questions pertaining to having touched or being touched by a person under the age of eighteen. Later in the interview, BROWN admitted to sexually molesting his daughter when she was five years old.

16. With the assistance of HSI's Harrisburg office and the West Shore, Pennsylvania Police Department, a federal search warrant was executed on the electronic media which SHAWN BROWN's ex-wife turned over to law enforcement after she obtained the protection order against BROWN in 2012 and BROWN moved out of their West Shore residence. The warrant was obtained on March 3, 2014 in the Middle District of Pennsylvania. The forensic examination revealed approximately 30 videos and 168 images contained in an ACER laptop and Emachines computer. Additional findings included keyword searches for teen chats, mom/mother chats, and a search for "how to get my cousin to sleep with me."

17. Based upon my education, training, and experience, and upon my discussions with other law enforcement officers, and because of their location, and their method of storage, the video and images described above in Paragraph 13 were shipped and transported using a

6

means or facility of interstate commerce or in or and affecting interstate or foreign commerce, or produced using materials that were shipped and transported in or affecting interstate or foreign commerce, including by computer.